E. MARTIN ESTRADA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
JOHN D. ELLIS (Cal. Bar No. 322922)
Assistant United States Attorneys
    Federal Building, Suite 7211
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone:  (213) 894-2740
    Facsimile:   (213) 894-0115
    E-mail:     john.ellis3@usdoj.gov

Attorneys for the
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>GREGORY WASSERMAN,<br><br>    Defendant. | No. 2:23-cv-01782<br><br>COMPLAINT TO REDUCE CIVIL MONEY PENALTIES TO JUDGMENT |

## **COMPLAINT**

The United States of America brings this action to reduce to judgment unpaid civil money penalties, late-payment penalties, and interest owed by Gregory Wasserman. The United States complains and alleges on information and belief as follows.

### **Authorization for Suit**

1. This action is brought pursuant to 31 U.S.C. § 3711(g)(4)(C) and in accordance with 31 U.S.C. § 5321 at the direction of the Attorney General of the United States and at the request of and with the authorization of the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States.

//

**Jurisdiction and Venue**

2. The district court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1340 because the action arises under the laws of the United States and because the United States is the plaintiff.

3. Venue properly lies in the Central District of California under 28 U.S.C. § 1391(b)(1) because Wasserman resides within the judicial district. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the United States' claims in this action occurred within the judicial district.

**The FBAR Requirement**

4. Section 5314 of Title 31 of the United States Code requires United States citizens to report certain transactions and relationships with foreign financial agencies.

5. Under section 5314's implementing regulations, "[e]ach United States person having a financial interest in, or signature or authority over, a bank, securities, or other financial account in a foreign country shall report such relationship" to the IRS for each year in which that relationship exists.

6. The relationship must be reported to the IRS on Treasury Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts. That form is commonly called an FBAR. An FBAR is due no later than June 30 "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year."

7. 31 U.S.C. § 5321(a)(5) authorizes the Treasury Secretary to impose a civil money penalty (FBAR penalty) on any person who violates, or causes any violation of, any provision of 31 U.S.C. § 5314. In a case involving a willful failure to report an interest in a foreign financial account, the maximum penalty is the greater of $100,000 or 50% of the balance in the account at the time of the violation.

**Wasserman Failed to File Accurate FBARs**

8. Wasserman was a United States citizen at all relevant times.

9. During the 2010 and 2011 calendar years, and other years that are not the

subject of this complaint, Wasserman had a financial interest in, signature authority over, and/or otherwise controlled at least one financial account outside of the United States.

10. Specifically, Wasserman had a financial interest in or signature authority over a foreign financial account at the FirstCaribbean International Bank (FCIB) in Grand Cayman, Cayman Islands, during the 2010 and 2011 calendar years.

11. Wasserman's FCIB account was a certificate-of-deposit account.

12. The account number associated with Wasserman's FCIB account changed during the period that Wasserman held the account.

13. The various account numbers associated with Wasserman's FCIB account ended in -7237, -4183, and -4553.

14. At times during 2010 and 2011, Wasserman's FCIB account held more than $1.5 million.

15. Wasserman was required to file FBARs reporting his FCIB account for the 2010 and 2011 calendar years.

16. Wasserman did not file timely FBARs disclosing his FCIB account for the 2010 or 2011 calendar years.

**Wasserman Willfully Failed to Disclose His FCIB Account**

17. Wasserman willfully failed to disclose his FCIB account for the 2010 and 2011 calendar years.

18. Wasserman is an educated and sophisticated businessperson.

19. Wasserman has held offshore bank accounts since at least 1998.

20. Among other offshore bank accounts, Wasserman held an FCIB account in the Cayman Islands between 1998 and 2003. He closed that FCIB account (which is not the subject of the penalties assessed in this case) in 2003 and received from FCIB a check in the approximate amount of $1,300,000.

21. In 2006, Wasserman used the $1,300,000 check containing the proceeds from his first FCIB account to open a second FCIB account. This second FCIB account is the subject of the penalties that the United States seeks to reduce to judgment.

22. At all relevant times Wasserman could access his FCIB account online through FCIB's website.

23. Additionally, account statements for Wasserman's FCIB account were regularly sent to an address Wasserman held in Florida.

24. In 2010, Wasserman traveled to Canada. There, he opened a checking account at the Bank of Montreal. Wasserman funded his Bank of Montreal account with a $1,100 initial deposit.

25. In or around 2010, Wasserman requested that his attorney assist him in repatriating the funds in his FCIB account from the Cayman Islands to the United States.

26. During 2011, Wasserman's attorney held a client-trust account at Bank of America in Concord, California.

27. Between 2011 and 2012, Wasserman transferred at least $1,554,192 from his FCIB account to his attorney's client-trust account. Specifically:

    a. On or around April 13, 2011, Wasserman wired $950,000 from his FCIB account to his attorney's client-trust account;

    b. On or around May 18, 2011, Wasserman wired $250,000 from his FCIB account to his attorney's client-trust account; and

    c. On or around June 6, 2012, Wasserman wired the remaining funds in his FCIB account, approximately $354,192, to his attorney's client-trust account.

28. Acting on Wasserman's behalf, Wasserman's attorney used certain funds repatriated from Wasserman's FCIB account to purchase a single-family residence in Camarillo, California. The remaining funds were transferred to a domestic bank account owned by Wasserman.

29. The Camarillo property is titled in the name of Viceroy Leasing, Inc., a Nevada corporation for which Wasserman's attorney is the registered President, Secretary, Treasurer, and Director.

30. Although Viceroy Leasing, Inc., purports to own the Camarillo property,

the Camarillo property belongs to Wasserman.

32. Wasserman has used the Camarillo property at all relevant times as his primary residence.

### Wasserman's Tax Returns

32. Wasserman filed Forms 1040, U.S. Individual Income Tax Return, for the 2010 and 2011 tax years.

33. Wasserman signed his federal income tax returns for the 2010 and 2011 tax years under penalty of perjury, averring that the return and accompanying schedules were true and correct.

34. Wasserman's attorney participated in the preparation of Wasserman's 2010 and 2011 tax returns.

35. On a Schedule B, Interest and Ordinary Dividends, attached to Wasserman's 2010 tax return, Wasserman indicated that he had an interest in a Canadian financial account.

36. Wasserman, however, did not disclose to the IRS on his 2010 Schedule B that he held a financial account in the Cayman Islands.

37. On a Schedule B attached to Wasserman's 2011 tax return, Wasserman again indicated that he had an interest in a Canadian financial account.

38. Wasserman, however, did not disclose to the IRS on his 2011 Schedule B that he held a financial account in the Cayman Islands.

39. Although both Wasserman and Wasserman's attorney knew of Wasserman's FCIB account in the Cayman Islands, Wasserman did not report any of the income associated with his FCIB account on his 2010 or 2011 tax return.

40. Wasserman filed a timely FBAR for the 2010 calendar year.

41. Wasserman's FBAR for the 2010 calendar year disclosed Wasserman's Bank of Montreal account but did not disclose his FCIB account.

42. Wasserman's 2010 FBAR indicated that the maximum value of Wasserman's Bank of Montreal account was $50,000.

43. In fact, Wasserman's Bank of Montreal account contained approximately $1,000 throughout the 2010 calendar year.

44. Wasserman knew or had reason to know that the Bank of Montreal account balance reported on his 2010 FBAR was incorrect.

45. Wasserman knew or had reason to know that his FCIB account was not reported on his 2010 FBAR.

46. Wasserman filed an FBAR for the 2011 calendar year.

47. Wasserman's 2011 FBAR disclosed Wasserman's Bank of Montreal account but did not disclose his FCIB account.

48. Wasserman's 2011 FBAR indicated that the maximum value of Wasserman's Bank of Montreal account during the 2011 calendar year was $25,000.

49. In fact, Wasserman's Bank of Montreal account contained approximately $1,000 throughout the 2011 calendar year.

50. Wasserman knew or had reason to know that the Bank of Montreal account balance reported on his 2011 FBAR was incorrect.

51. Wasserman knew or had reason to know that his FCIB account was not reported on his 2011 FBAR.

52. Wasserman received at least $12,907 of interest income from his FCIB account during the 2010 tax year.

53. Wasserman did not report any of the interest income associated with his FCIB account on his 2010 tax return.

54. Wasserman received at least $4,576 of interest income from his FCIB account during the 2011 tax year.

55. Wasserman did not report any of the interest income associated with his FCIB account on his 2011 tax return.

56. Between 2006 and 2012, Wasserman received over $195,891 of interest income in relation to his FCIB account.

57. Wasserman did not report of the interest income associated with his FCIB

account on his federal income tax return for the 2006 through 2012 tax years.

**Reduction of Assessments to Judgment**

58. Under 31 U.S.C. § 5321(b)(1), the IRS is ordinarily required to assess FBAR penalties no later than six years after the date of the relevant violation.

59. Wasserman extended by agreement the date by which the IRS could assess FBAR penalties for the 2010 and 2011 calendar years until June 30, 2021.

60. On or around May 18, 2021, the IRS assessed one willful FBAR penalty against Wasserman for each of the 2010 and 2011 calendar years.

61. The FBAR penalty assessed for the 2010 calendar year was in the amount of $176,743.

62. The FBAR penalty assessed for the 2011 calendar year was in the amount of $100,000.

63. Together, the FBAR penalties assessed against Wasserman for the 2010 and 2011 calendar years totaled $276,743.

64. The FBAR penalties assessed against Wasserman for the 2010 and 2011 calendar years were each timely assessed under 31 U.S.C. § 5321(b)(1).

65. On or around May 20, 2021, notice and demand for payment of the FBAR penalties for the 2010 and 2011 calendar years was sent to Wasserman at Wasserman's last known address in Camarillo, California.  Wasserman, however, has not fully paid the FBAR penalties.

66. Interest, as provided by law, has accrued on the penalties assessed against Wasserman and remains unpaid.  Late payment penalties have also accrued.

67. As of July 27, 2022, the unpaid balance owed to the United States by Wasserman for the assessed 2010 and 2011 FBAR penalties is $72,873, comprising FBAR penalties in the amount of $68,326, late-payment penalties in the amount of $3,897, and interest in the amount of $650.

68. The United States is entitled to a judgment against Wasserman in the amount of $72,873 as of July 27, 2022, plus additional accrued penalties, interest, and

fees as provided by law.

WHEREFORE, the United States requests that the Court:

A. Determine that Wasserman willfully failed to disclose his interest in his FCIB account for the 2010 and 2011 calendar years;

B. Enter judgment against Wasserman and in favor of the United States in the amount of $72,873 as of July 27, 2022, plus additional accrued penalties, interest, and fees as provided by law;

C. Award the United States its costs in bringing this action, including all fees and collection costs incurred before or after the filing of this complaint; and

D. Order any further relief it deems just and appropriate.

Dated: March 9, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

   /s/ John D. Ellis
JOHN D. ELLIS
Assistant United States Attorney

Attorneys for the United States of America